<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENISE AGOSTINO, et al., : : Plaintiffs, : : v. : : QUEST DIAGNOSTICS, INC., et al., : : Defendants. : : : | **Civil Action No. 04-4362 (SRC)** **OPINION** |

<u>**CHESLER**</u>, District Judge

This matter comes before the Court on four motions for summary judgment, pursuant to FED. R. CIV. P. 56: 1) the motion by Plaintiffs Richard and Janet Grandalski ("Plaintiffs" or the "Grandalskis") [docket entry 267]; 2) the motion by Defendant Quest Diagnostics Inc. ("Quest") [docket entry 274]; 3) the motion by Defendant Quantum Collections, Inc. ("Quantum") [docket entry 325]; and 4) the motion by Defendant Credit Bureau Central ("CBC") [docket entry 327]. The Court has opted to rule based on the papers submitted and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the motions will be granted in part and denied in part.

I. **BACKGROUND**

    A. **Procedural History**

Eighteen plaintiffs filed this lawsuit in September of 2004 as a putative class against Quest and the debt collectors Quest employed to pursue unpaid bills. The operative complaint is

the First Amended Class Action Complaint ("Amended Complaint") which contains eight counts, alleging claims for: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), (2) violations of the Fair Debt Collection Practices Act ("FDCPA"), (3) violations of the Employee Retirement Income Security Act ("ERISA"), (4) violations of the New Jersey Consumer Fraud Act, (5) violations of other states' consumer fraud acts, (6) breach of contract, (7) unjust enrichment, and (8) common law fraud.  This Court denied plaintiffs' two attempts to certify the class on February 11, 2009 and December 22, 2010, respectively.  Thereafter, fifteen of the parties settled their claims, leaving only Denise Cassese, Richard Grandalski, and Janet Grandalski with pending matters.  Subsequently, plaintiff Cassese moved for summary judgment on her consumer fraud claim against Quest, which this Court denied on October 6, 2011.  As a result, only five counts remain viable against Defendant Quest, and five counts against Defendants CBC and Quantum (the "Debt Collector Defendants" or "DCDs") (hereinafter, Quest and the DCDs collectively, "Defendants").[1]

This Court previously conducted an exhaustive choice-of-law analysis and concluded that while New Jersey law should be applied to the plaintiffs' unjust enrichment claims, the laws of plaintiffs' home states - New York for plaintiff Cassese and Nevada for the Grandalskis - should be applied to their state law claims for consumer fraud, common law fraud, and breach of

---

[1] The ERISA claim is not viable as to the Defendants because it was not brought on behalf of any of the three remaining plaintiffs (*see* Amended Complaint ¶¶ 166, 169, 171-72); the New Jersey Consumer Fraud Act claim is not viable against the Defendants because this Court held that each plaintiff's home state's consumer fraud act applies, rather than the New Jersey Act (*see Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437, 461-63 (D.N.J. 2009)), and none of the remaining plaintiffs reside in New Jersey; the FDCPA claim is not viable as to Quest because Quest is a creditor, not a debt collector (*see* 15 U.S.C. § 1692a(6)); and the breach of contract claim is not viable as to the DCDs because it has only been asserted against Quest.  (*See* Amended Complaint ¶ 182).

contract.

B.     Statement of Facts

Plaintiffs Richard and Janet Grandalski, who are insured by Anthem Blue Cross and Blue Shield ("Anthem"), were billed six $30 invoices - each consisting of a $20 co-payment and a $10 collection fee - by the Debt Collector Defendants, on behalf of Quest, for two dates of service for Mr. Grandalski and four dates of service for Mrs. Grandalski.  Plaintiffs paid the DCDs $120 for Mrs. Grandalski's four dates of service, comprised of $80 in co-payments and $40 in service charges.[2]  According to Plaintiffs, Quest wrongfully added, - in violation of the hold harmless

---

[2] Quest moves for summary judgment on all claims brought by Mr. Grandalski, arguing that since he did not pay any money for either of his two dates of service, he has not suffered any injury.  In support of its contention, Quest points to this Court's prior decision in this case, where it held that plaintiff Mark Smaller lacked standing to pursue claims for alleged improper bills submitted to his minor daughter.  However, under Nev. Rev. Stat. § 12.020, "[a] husband and wife may sue jointly on all causes of action belonging to either or both of them."  While the statute provides for two exceptions, neither of which are applicable here.  Therefore, Quest's reliance on this Court's previous holding is misplaced since Mr. Smaller's claim did not implicate the Nevada statute.  As such, Mr. Grandalski may sue jointly on Mrs. Grandalski's claims against Quest that arise under Nevada law, which include her consumer fraud, common law fraud, and breach of contract claims.  However, the statute does not implicate Mrs. Grandalski's RICO and unjust enrichment claims since they arise under federal and New Jersey law, respectively.  As indicated by Quest, both RICO and unjust enrichment claims require proof of actual injury.  *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) ("concrete financial loss" required under RICO); *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994) (unjust enrichment claim requires a showing that the plaintiff conferred a benefit on the defendant).  Because Mr. Grandalski has not demonstrated that he suffered any harm, Quest's motion for summary judgment on Mr. Grandalski's RICO and unjust enrichment claims will be granted.
   Quest alternatively contends that if the Grandalskis can jointly pursue claims, then the alleged overpayment of $40 made by Mrs. Grandalski is offset by the $40 that Mr. Grandalski still owes Quest for his two dates of service.  However, Quest did not raise this issue as a counterclaim or affirmative defense in its pleadings, but rather raised it for the first time in its reply brief to Plaintiffs' opposition motion.  Therefore, the appropriateness of an offset will not be considered by this Court.
   Quest also moves for summary judgment on all claims brought by plaintiff Denise Cassese.  In this Court's October 6, 2011 Opinion & Order, it denied plaintiff Cassese's motion for summary judgment on her consumer fraud claim since she failed to provide proof of actual

provision in the provider agreement between Quest and Anthem which precluded Quest from billing Anthem insureds for charges in excess of the stated patient responsibility on an Explanation of Benefits ("EOB") or Electronic Remittance Advice ("ERA") - and the DCDs wrongfully demanded and collected these four $10 collection fees. Plaintiffs now move for summary judgment on their consumer fraud and unjust enrichment claims against Defendants, on their breach of contract claim against Quest, and on their FDCPA claim against the DCDs.[3] Defendants Quest, Quantum, and CBC have also filed separate motions for summary judgment.

II.  LEGAL ANALYSIS

   A.   **Standard of Review**

Summary judgment is appropriate under FED. R. CIV. P. 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for

---

injury, a requisite prong for her New York Consumer Protection Act claim. Because the remainder of plaintiff Cassese's claims against Quest require that she establish actual harm, Quest's motion for summary judgment on her remaining claims will be granted. *See Maio*, 221 F.3d at 483 ("concrete financial loss" required under RICO); *Brualdi v. IBERIA*, 79 A.D.3d 959, 960 (N.Y. App. Div. 2010) (plaintiff's must establish "resulting damages" in order to maintain a breach of contract claim); *VRG Corp.*, 135 N.J. at 554 (unjust enrichment claim requires a showing that the plaintiff conferred a benefit on the defendant); *Mora v. RGB, Inc.*, 17 A.D.3d 849, 852 (N.Y. App. Div. 2005) (damages are an element of a fraud claim).

   [3] In their motion for summary judgment, Plaintiffs also move for prejudgment interest. The award of prejudgment interest is a matter of discretion for the trial court that should be based on considerations of fairness. *Pignataro v. Port Auth.*, 593 F.3d 265, 274 (3d Cir. 2010). Because Plaintiffs have not presented any argument as to *why* prejudgment interest would be fair in the current matter, their request will be denied.

the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid.*

5

*Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

  **B.** **Discussion**

    1. <u>Count I: RICO Claim</u>

Defendants move for summary judgment on the First Count of the Amended Complaint, arguing that the record does not support a claim for a RICO violation. The theory of the RICO claim asserted by Mrs. Grandalski is that, by billing her in excess of the financial responsibility listed on the EOB or ERA, Defendants defrauded her into paying more than she owed. The predicate criminal acts of Mrs. Grandalski's RICO claims are mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, respectively. Proving the underlying acts of racketeering requires Mrs. Grandalski to demonstrate that Defendants participated in a scheme with specific intent to defraud. *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995) (establishing mail fraud violation requires proof of a participation in a scheme with specific intent to defraud); *United States v. Veksler*, 62 F.3d 544 (3d Cir. 1995) (establishing a wire fraud violation requires proof of a participation in a scheme with specific intent to defraud). Proof of specific intent "'may be

found from a material misstatement of fact made with reckless disregard for the truth.'" *Coyle*, 63 F.3d at 1243 (quoting *United States v. Hannigan*, 27 F.3d 890, 892 n.1 3d Cir 1994)).

Defendants have satisfied their burden at summary judgment by pointing to the absence of evidence to support Mrs. Grandalski's claim. Nothing in the record indicates that Quest or the DCDs knew or should have known that each of the billed amounts at issue was incorrect. The mere allegation that Mrs. Grandalski received a bill for an amount above that which is allowable under the provider agreement between Quest and Anthem is not sufficient to prove scienter. Billing mistakes happen for any number of reasons, some of which are not attributable to malfeasance on the part of the Defendants. Indeed, an analysis by Quest's medical billing expert of 51 of the patient billing disputes at issue concluded that, where inappropriate billing was alleged, errors causing patient bills to issue could have been attributable to Quest, but also to patients, referring physicians, payers or to a combination of errors by any multiple of the parties involved. (Dyckman Report at 52.) Because Mrs. Grandalski has not presented actual evidence that creates a genuine issue as to this material fact, Defendants' motions for summary judgment on the RICO claim will be granted.

    2.    Count II: FDCPA Claim

Plaintiffs move for summary judgment on their FDCPA claim, alleging that Defendants Quantum and CBC violated 15 U.S.C.S. §§ 1692e and 1692f by "demanding collection fees in excess of the original debt."[4] (Pls.' Summ. J. Mot. at 29.) Under the FDCPA, a debt collector is

---

[4] The DCDs also argue that Mr. Grandalski lacks standing to assert his motion for summary judgment since he has not suffered any injury. As aforementioned, Mr. Grandalski has standing to assert the common law and consumer fraud claims since they both implicate the Nevada statute permitting a husband and wife to sue jointly on all causes of action belonging to either or both of them. *See* Nev. Rev. Stat. § 12.020. However, the DCDs' motions for summary

prohibited from:

> Collecti[ing] any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C.S. § 1692f(1). In addition, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of a debt," which includes the "false representation of . . . the character, amount, or legal status of any debt." *Id.* at § 1692e(2). In their opposition brief, Defendants Quantum and CBC do not claim that they were authorized by agreement or law to seek and collect the $10 administrative fees. Instead, they argue that they did not knowingly violate the FDCPA since Quest added the collection fees to Plaintiffs' accounts before transmitting the bills to the DCDs to collect. While the DCDs aver that they simply sought and collected what they believed to be valid bills, the FDCPA is a strict liability statute and a consumer need not show intentional violation of the Act by a debt collector to be entitled to damages. *Allen v. LaSalle Bank*, 629 F.3d 364, 368 (3d Cir. 2011); *Gryzbowski v. I.C. System, Inc.*, 691 F. Supp. 2d 618, 622 (M.D. Pa. 2010). Thus, regardless of their intent,

---

judgment on Mr. Grandalski's RICO and unjust enrichment claims will be granted since those claims do not arise under Nevada law and since Mr. Grandalski has not demonstrated that he suffered any harm. *See Maio v. Aetna, Inc.*, 221 F.3d at 483; *VRG Corp.*, 135 N.J. at 554. Regarding the FDCPA claim, actual damages are not required in order for a party to have standing. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009); *Robey v. Shapiro, Marianos & Cejda*, 434 F.3d 1208, 1212 (10th Cir. 2006). Therefore, Mr. Grandalski can pursue his claim under the Act.

In its opposition brief, Quantum alternatively contends that its dunning of Mr. Grandalski for his April 18, 2002 and May 12, 2003 dates of service is time barred since an action under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). However, as Plaintiffs point out in their reply brief, the record, which is undisputed by Quantum, indicates that Quantum dunned Mr. Grandalski for his April 18, 2002 date of service on April 6, 2004 (Tusa Decl., Ex. 30 at 147), and for his May 12, 2003 date of service on April 5, 2004 (Tusa Decl., Ex. 33 at 126). As such, both of these collection efforts fall within one year of the filing of this action and are not time barred. *See* 15 U.S.C.S. § 1692d.

as a matter of law, the DCDs violated the FDCPA when they falsely represented the amount of money the Plaintiffs owed and when they collected amounts in excess of what the Plaintiffs were legally obligated to pay.

In their opposition motion, the DCDs raise the affirmative defense of bona fide error. Under 15 U.S.C.S. § 1692k(c), a debt collector will not be held liable for a FDCPA violation if it can establish that the violation was not intentional and that it maintained procedures reasonably adapted to avoid such errors. *See* 15 U.S.C.S. § 1692k(c); *Beck v. Maximus, Inc.*, 457 F.3d 291, 297-98 (3rd Cir. 2006). Accordingly, to avail itself of the defense, the DCDs will have to establish: (1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors. *Id.* The first prong of this defense is a subjective test that requires a credibility determination concerning the debt collector's assertions that the ensuing FDCPA violation was unintentional. *Johnson v. Riddle*, 443 F.3d 723, 728-29 (10th Cir. 2006). The second and third prongs of the defense are objective and require an inquiry into whether any precautions were actually implemented, and whether such precautions "were reasonably adapted to avoid the specific error at issue." *Id.* at 729.

Plaintiffs do not dispute the DCDs' contention that Quest independently added the collection fees to the principal amount owed and then transmitted the data to them as valid and collectible bills. Furthermore, Plaintiffs do not controvert the DCDs' assertion that they were unaware that Quest was prohibited by contract from adding the administrative fees. Therefore, the first prong of the defense has been satisfied. However, Plaintiffs have satisfied their burden at summary judgment by pointing to an absence of evidence to support the second and third

9

prongs of the bona fide error defense. In response, the DCDs offer the bare assertion that they have "reasonable and industry accepted procedures for debtor validation" (DCDs' Repl. Br. at 21); a contention that is wholly conclusory and devoid of any specificity regarding what those industry accepted procedures actually are, or how they are reasonably adapted to avoid the specific error at issue of collecting unlawful fees. Accordingly, the DCDs have not established a genuine issue as to this material fact. Therefore, Plaintiffs' motion for summary judgment on the FDCPA claim will be granted and the DCDs' motions on this claim will be denied.

        3.      <u>Count V: Consumer Fraud Claim</u>

Plaintiffs move for summary judgment on the Fifth Count of their Amended Complaint, alleging that Defendants violated the Nevada consumer fraud statute, Nevada Revised Statute (NRS) 41.600, *et seq.* NRS 41.600 provides that "[a]n action may be brought by any person who is a victim of consumer fraud." Nev. Rev. Stat. § 41.600(1). The statute then goes on to define consumer fraud as, *inter alia,* "a deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive." *Id.* at § 41.600(2)(e).[5]

---

[5] Plaintiffs allege that Defendants violated the following provisions of Nev. Rev. Stat. §§ 598.0915 and 598.0923:

> 598.0915. A person engages in a "deceptive trade practice" if, in the course of his or her business or occupation, he or she:
>
> **13.** Makes false or misleading statements of fact concerning the price of goods or services for sale or lease, or the reasons for, existence of or amounts of price reductions.
>
> **15.** Knowingly makes any other false representation in a transaction.
>
> 598.0923. A person engages in a "deceptive trade practice" when in the course of his or her business or occupation he or she knowingly:

Plaintiffs assert that Quest engaged in consumer fraud by directing the DCDs to bill the Plaintiffs amounts in excess of their co-payments, in violation of its provider agreement with Anthem. In its opposition brief, Quest claims that its conduct is not covered under the statute since it made no *direct* misrepresentations to the Plaintiffs; rather, it was the DCDs who charged the Plaintiffs six $30 bills. However, Quest does not suggest, in its moving papers or opposition brief, that it had anything in its documentation authorizing it to tack on a service charge for delinquent bills. Quest added on the administrative fees with no legal basis for doing so and then directed the DCDs to collect them under the pretense that they were valid bills. This is, at the very least, implicit misrepresentation, falling within the parameters of Nevada's consumer fraud statute. Therefore, Plaintiffs have satisfied their summary judgment burden by showing the absence of a genuine issue of material fact regarding this claim. Accordingly, their motion for summary judgment on their consumer fraud claim against Quest will be granted and Quest's summary judgment motion on the claim will be denied.

Plaintiffs also assert a consumer fraud claim against the DCDs.[6] However, Plaintiffs do

---

> **2.** Fails to disclose a material fact in connection with the sale or lease of goods or services.
>
> **4.** Uses coercion, duress or intimidation in a transaction.

Nev. Rev. Stat. §§ 598.0915(13), 598.0915(15), 598.0923(2), 598.0923(4).

[6] In their summary judgment motion, Plaintiffs aver that because the DCDs violated the FDCPA, they necessarily violated the Nevada consumer fraud statute. Plaintiffs cite to *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, for its holding that "violations of the FDCPA are deemed to be unfair or deceptive acts or practices," and argue that unfair and deceptive practices constitute consumer fraud under the Nevada statute. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1606 (2010). However, Plaintiffs conveniently omit the latter part of the Supreme Court holding, which states that "violations of the FDCPA

not contend, nor provide any evidence, that the DCDs *knowingly* made a false representation or failed to disclose a material fact.  While Plaintiffs have provided some evidence that the DCDs had actual knowledge that Quest was adding $10 collection fees to patient bills, nothing in the record indicates that the DCDs knew that this violated the agreement between Quest and Anthem.  Furthermore, Plaintiffs have not demonstrated that the DCDs made a false or misleading statement of fact since the DCDs made it clear that they were charging Plaintiffs an administrative fee in addition to the co-payment.  Additionally, while Plaintiffs assert that the DCDs used intimidation and coercion in their collection efforts by threatening to report Plaintiffs' delinquency to credit reporting bureaus, Plaintiffs do not controvert the fact that it is the DCDs' common practice, as debt collectors, to advise a debtor that failure to pay legally incurred debts may be reported to credit reporting agencies or result in a lawsuit.  *See, cf., Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 (3d Cir. 2000); *Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150, 160 (E.D.N.Y. 2005).  Accordingly, Plaintiffs have not satisfied their burden at summary judgment of showing that no reasonable jury could find for the DCDs on this issue.  As such, Plaintiffs' motion for summary judgment on the consumer fraud claim against the DCDs will be denied and Quantum's and CBC's motions for summary judgment on the claim will be granted.

---

are deemed to be unfair or deceptive acts or practices **under the Federal Trade Commission Act**." *Id.* (emphasis added).  As such, any violation of the FDCPA by the DCDs does not automatically amount to a deceptive trade practice in violation of the Nevada consumer fraud statute.

    4.  Count VI: Breach of Contract Claim

  Plaintiffs move for summary judgment on their breach of contract claim against Quest, alleging that they are third-party beneficiaries of the provider agreement (the "Agreement") between Quest and Anthem, permitted to sue for Quest's breach of the hold harmless provision. The parties do not dispute the facts relating to this claim. Quest simply contends that Plaintiffs are not third party beneficiaries as a matter of law.

  Issues of contractual construction, in the absence of ambiguity or other factual complexities, present questions of law for the courts and are suitable for determination by summary judgment. *See Ellison v. C.S.A.A.*, 106 Nev. 601, 603 (Nev. 1990). Under Nevada law, an individual may sue as a third-party beneficiary of a contract only if "the contracting parties demonstrated a clear intent to benefit the third party." *Ideal Elec. Co. v. Flowserve Corp.*, No. 02-1092, 2006 U.S. Dist. LEXIS 86923 at *29 (D. Nev. Nov. 22, 2006). In cases where the contract lacks an express declaration of that intent, there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves. *Delta Mech., Inc. v. Garden City Group, Inc.*, 345 Fed. Appx. 232, 233 (9th Cir. 2009). "Where parties expressly deny any intention of conferring rights upon a third party . . . , the critical question of whether they intended to benefit the third party is resolved." 9-44 Corbin on Contracts, § 44.4; *see, e.g., Seifer v. PHE, Inc.*, 196 F. Supp. 2d 622, 634 (S.D. Ohio 2002) (holding that the parties did not intend to confer third-party beneficiary status upon Plaintiff where the agreement stated "[n]othing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this agreement on any parties other than the parties to it and their respective successors and assigns . . .").

According to Plaintiffs, because the hold harmless provision of the Agreement states that it "shall be construed to be for the benefit of the Member" (Tusa Decl., Ex. 8 at 1073), they, as members, are intended beneficiaries. Quest, however, points to a latter clause of the contract which states that "[t]his Agreement shall not create any right or cause of action in or on behalf of any person other than HMO or laboratory" (Tusa Decl., Ex.8 at 1073, 1080), and argues that this provision unequivocally rejects the notion that the parties intended to create a third party beneficiary. While Plaintiffs acknowledge that this language expressly denies any intention of conferring rights upon them, they contend that a case from an intermediate Wisconsin court, *Dorr v. Sacred Heart Hospital*, warrants a different result. In *Dorr*, a patient sought to sue a hospital as a third-party beneficiary of the provider agreement between the hospital and the patient's HMO. In that case, the court held that the HMO subscribers were third party beneficiaries of the contract which had an identical hold harmless provision, even in the face of a subsequent clause which stated that "*except as otherwise specifically provided herein*, this Agreement shall not create or be construed to create any rights in any matter whatsoever in an other person or entity as a third party beneficiary." *Dorr v. Sacred Heart Hospital*, 597 N.W. 2d 462, 250 (Wisc. App. 1999) (emphasis added). However, Plaintiffs ignore a critical difference between the provider contract in *Dorr* and the Agreement here. As the Wisconsin court noted, the provider agreement in *Dorr* specifically contemplated that there would be exceptions to the general prohibition on third-party beneficiary status. The Agreement here, does not. Because this Agreement unambiguously states that it "*shall not create any right or cause of action* in or on behalf of any such person other than HMO or Laboratory" (Tusa Decl., Ex.8 at 1080), it is clear that Quest and Anthem did not intend to benefit third parties. (Emphasis added).

Accordingly, summary judgment will be granted in favor of Quest because of Plaintiffs' inability, on record before the Court, to prove the requisite intent to confer third party beneficiary status. Therefore, Plaintiffs' motion for summary judgment on their breach of contract claim will be denied and Quest's motion for summary judgment on the claim will be granted.

### 5. Count VII: Unjust Enrichment Claim

Mrs. Grandalski moves for summary judgment on her unjust enrichment claim, contending that the Defendants were unjustly enriched by their wrongful collection and retention of $40 in collection fees. There is no dispute about any material fact here. The question before the Court is whether these facts support a claim for unjust enrichment as a matter of law.

Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law.[7] *Dovale v. Marketsource, Inc.*, No. 05-2872, 2006 U.S. Dist. LEXIS 57679 at *22 (D.N.J. Aug. 17, 2006). To establish a claim for unjust enrichment, a plaintiff must prove that the defendant received a benefit and that retention of that benefit without payment would be unjust. *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 541 (N.J. 1994). The unjust enrichment doctrine "requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id*. Furthermore, it is considered unjust enrichment "to permit the recipient of money paid under mistake of fact to keep it, unless the circumstances are such that it would be inequitable to require its return."

---

[7] Because unjust enrichment is an equitable remedy only available when there is no adequate remedy at law, it provides an alternate basis to the statutory relief that Plaintiff is seeking. If Plaintiff opts for statutory damages against Quest under the Nevada consumer fraud statute, or against the DCDs under the FDCPA, those damages would necessarily encompass any restitutionary damages Mrs. Grandalski would be awarded for her unjust enrichment claim.

*Transamerica Occidental Life Ins. Co. v. Total Sys.*, No. 08-1323, 2011 U.S. Dist. LEXIS 35440 at *10 (D.N.J. Mar. 31, 2011); *Winslow, Cohu & Stetson, Inc. v. Skowronek*, 344 A.2d 350, 354 (N.J. Super. Ct. Law Div. 1975).

Quest arrogated $10 collection fees without any arguable basis for doing so under contract or otherwise. When Mrs. Grandalski made the four $10 dollar payments, she operated under the mistaken belief of fact that Defendants had a legal basis to charge those fees. Accordingly, this Court concludes that Mrs. Grandalski has satisfied her burden of showing that she has an unjust enrichment claim against Quest for the $40 in collection fees paid for her four dates of service. *See Winslow*, 344 A.3d at 354. In addition, to the extent that the DCDs retained any portion of the administrative fees for their successful collection, Mrs. Grandalski has an unjust enrichment claim against them as well.

In their opposition briefs, Defendants cite to case law which stands for the proposition that voluntary overpayment need not be refunded. However, as those cases explain, "fraud, duress, extortion or mistake of fact" vitiate the "volunteer rule." *See New Jersey Builders Assoc. v. Borough of Mendham*, 621 A.2d 985, 988 (N.J. Super. Ct. App. Div. 1993). Plaintiffs have satisfied their burden at summary judgment by pointing to the absence of evidence to support the Defendants' defense. Here, Mrs. Grandalski erroneously believed she was required to pay the entirety of the invoices she received, and operated under the threat that refusal to pay could show up on a credit report. Thus, Defendants have not demonstrated that the paid administrative fees were truly voluntary. Therefore, Mrs. Grandalski's motion for summary judgment on her unjust enrichment claim will be granted and Defendants' motions will be denied.

### 6. Count VIII: Common Law Fraud Claim

Defendants move for summary judgment on the Eighth Count of the Amended Complaint for common law fraud. A plaintiff has the burden of proving each element of a fraud claim by clear and convincing evidence. *Lubbe v. Barba*, 540 P.2d 115 (1975). These elements are:

1. A false representation made by the defendant;

2. Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation);

3. Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;

4. Plaintiff's justifiable reliance upon the misrepresentation; and

5. Damage to the plaintiff resulting from such reliance.

*Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (1992). Defendants have satisfied their burden at summary judgment by pointing to the absence of evidence to support the third prong of this claim. As discussed in the RICO section of this Opinion, *supra*, nothing in the record indicates that Quest or the DCDs knew or should have known that each of the billed amounts at issue was incorrect. The mere allegation that Mrs. Grandalski received a bill for an amount above that which is allowable under Quest's Agreement with Anthem is not sufficient to prove that Defendants intended to induce the Plaintiffs to act. Because Mrs. Grandalski has not presented actual evidence that creates a genuine issue as to this material fact, Defendants' motion for summary judgment on the common law fraud claim will be granted.

**III.   CONCLUSION**

For the foregoing reasons, this Court will grant in part and deny in part the motions for summary judgment. An appropriate form of order will be filed together with this Opinion.

  s/Stanley R. Chesler  
STANLEY R. CHESLER  
United States District Judge

DATED: November 3, 2011