~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~:
RICHARD GRANDALSKI, JANET       :
GRANDALSKI and DENISE CASSESE,  :
Individually and on behalf of all others :
similarly situated,             :
                                :          Civil Action No. 04-4362(SRC)(MAS)
            Plaintiffs,          :
    v.                          :
                                :
QUEST DIAGNOSTICS, INC.,        :
RETRIEVAL MASTERS CREDIT        :
BUREAU, INC. d/b/a AMERICAN     :
MEDICAL COLLECTION AGENCY,      :          **REPORT and RECOMMENDATION**
CREDIT COLLECTION SERVICES,     :              **OF SPECIAL MASTER**
CREDIT BUREAU CENTRAL,          :
QUANTUM COLLECTIONS, and        :
DOES 1 to 50,                   :
                                :
            Defendants.          :
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~:

The Honorable Stanley R. Chesler, USDJ, has appointed the undersigned as a Special

Master to accomplish the following task in aiding the Court in its award of counsel fees to

counsel for the Plaintiffs Richard and Janet Grandalski. As Judge Chesler stated succinctly:

> The Court will therefore exercise its discretion under Federal Rule
> of Civil Procedure 53 and appoint a special master to analyze the
> record and prepare a report calculating the lodestar of Plaintiffs'
> attorneys, based on identification of the tasks reasonably related to
> legal representation of the Grandalskis on their individual FDCPA
> and NCFA claims and multiplication of the hours dedicated to
> those tasks by a reasonable hourly rate charged by practitioners
> who regularly prosecute such claims.

Slip. Op. June 20, 2012 at 5.

The lengthy and complex history of this case is summarized in many items on the Court's

docket and is completely familiar to all participants before me. Therefore, I shall not belabor this

report with a lengthy recitation of the same. For present purposes, after class certification was

twice denied, the case evolved into several individual claims asserted by named Plaintiffs

Richard and Janet Grandalski which were adjudicated by Judge Chesler upon cross-motions for summary judgment. That decision is reflected in the Court's Opinion filed on November 3, 2011 and is codified in an Order of the same date which is annexed hereto as Exhibit A. The Grandalskis' success on these summary judgment motions was later summarized by Judge Chesler as follows:

> Plaintiffs seek to recover attorneys fees based on winning summary judgment on three of their six claims. In particular they prevailed against Defendants Quantum Collections ("Quantum") and Credit Bureau Central ("CBC") on their claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k, and against Defendant Quest on their claim under the Nevada Consumer Fraud Act ("NCFA"), Nev. Stat. Ann. §41.600. Both of these statutes contain mandatory fee-shifting provisions, which entitle the prevailing party to an award of reasonable attorneys' fees and costs. See 15 U.S.C. § 1692k(a)(3); Nev. Stat. Ann.§41.600.3(c).

Slip. Op. June 20, 2012 at 3.

Against the foregoing background, and using the lodestar approach, the undersigned will now proceed to calculate and report recommended attorneys' fees and costs.

## I.    REASONABLE HOURLY RATES

Recently in Federal Trade Commission v. Circa Direct LLC, Civil No. 11-2172 RMB/AMD, the Honorable Renée Bumb of this court issued an Opinion and Order in which her Honor found that reasonable rates in the Southern New Jersey market, differentiated by the relative experience of the attorneys before her in that case, should range from $150 per hour for a junior associate to $400 per hour for a senior partner. I believe that approach should be employed here, that is, differentiating between the fees of the various attorneys who participated in the Grandalski case. Indeed, such differentials appear in the affidavits from the law firms demonstrating the billing rates sought for their various attorneys. In responding to my inquiry to counsel about the

2965486-01

significance of the Circa Direct case, Plaintiffs asked me to consider that, by general acceptance, prevailing rates in the South Jersey market are lower than those in Northern New Jersey where the present case is pending. While that may be so, the record before this case does not necessarily support that conclusion. The firm of Trujillo, Rodriguez, et al. is headquartered in Haddonfield, New Jersey. Their rates presented here range from $410 per hour for an associate to $600 for a senior partner, Lisa Rodriguez. This range is quite similar to the ranges asserted by the other five law firms in this matter, whose practices are not predominantly in Southern New Jersey: Tusa - $600 per hour; Giskan Solotaroff - $625 to $650 per hour; Cafferty Faucher - $600 to $675 per hour; Quinn Connor - $250 to $550 per hour; and Robbins Geller - $480 to $660 per hour. Therefore, the undersigned would draw no inference that higher rates should be employed in this matter than those in Circa Direct because we are in Northern rather than Southern New Jersey.

Regarding the evidence in the record as to what would be a reasonable rate in this market for the prosecution of the Grandalski's individual claims, the most persuasive evidence is presented by the Defendants. To be sure, the affiant James Scott Murphy represents the Defendants Credit Bureau Central and Quantum Collections in this matter. One must consider that when weighing the evidence presented in his declaration leading to his conclusion that a reasonable rate of $275 per hour for Plaintiffs should be applied in this case. However, his experience in matters of this kind is certainly relevant and probative. Additional defense evidence is presented in the following manner: At Table 2 of their Joint Opposition to the present revised motion for attorneys' fees, Defendants list four recently decided FDCPA cases in the District of New Jersey in which, overall, the fees allowed ranged from $200 to $325 per hour. At Exhibit 4 to that Joint Opposition, Defendants submit a copy of an affidavit of one Joseph K.

Jones, Esq., an experienced counsel for Plaintiffs in FDCPA cases, seeking attorneys' fees at his regular hourly rate of $325 for such matters.

The arguments of Plaintiffs' counsel for higher rates are unpersuasive. The gist of their argument is that their actual rates should be applied, even though they are experienced class action counsel who twice were unsuccessful in securing class certification. However, Judge Chesler's charge to this Special Master could not be clearer. To reiterate, I am directed to multiply the hours allowed "by a reasonable hourly rate charged by practitioners who regularly prosecute such claims." Slip. Op. June 20, 2012 at 5 (emphasis added).

Defendants have presented persuasive evidence of a range of reasonable hourly rates "charged by practitioners who regularly prosecute such [individual] claims" as those of the Grandalskis under the FDCPA and NCFA. Id. Plaintiffs have not. However, I do not agree with Defendants that I should construct a hypothetical individual claims case and apply a uniform rate. See Joint Opposition at 39. That approach is contrary to the undertaking with which I am charged under Judge Chesler's December 20, 2012 Opinion. Id. at 4-6. As did Judge Bumb in Circa Direct, I will apply differentiated rates which are generally within the range of reasonable rates described above.

Taking advantage of the differentiation between counsel presented in the declarations from the various law firms in this matter, one finds that if those rates are each reduced by 50%, they fall very much within the range generated by this record and also employed by Judge Bumb on the record before her. Under those circumstances, the rate for the Tusa firm would be $300 per hour, for Trujillo Rodriguez $205 to $300 per hour, for the Giskan firm $312.50 to $325 per hour, for the Cafferty firm $300 to $337.50 per hour, for the Quinn firm $125 to $275 per hour, and for the Gelber firm $240 to $330 per hour. I recommend that those respective rates be

2965486-01

applied to each attorney's allowable hours in this matter to generate a reasonable attorney's fee herein. Therefore, I shall employ those rates in this report.

## II.    **COMPENSABLE WORK**

A.   Initial Determinations

(1.)     The Parties will recall that I reserved decision upon a motion last fall by the Defendants to strike the Plaintiffs' present application for attorney's fees because it did not comply with Judge Chesler's directions as to what a revised petition should contain. As I indicated in my letter-memorandum to counsel dated November 8, 2012, I will address that argument in the present Report and Recommendation. While I am recommending that different hourly rates be applied than those sought by the present attorneys, and am not allowing all hours requested, particularly with regard to those which cannot be adequately identified as applying specifically to the Grandalskis, I do not find that the present revised petition fails to permit this Special Master to determine reasonable attorneys' fees in this case, guided by the parameters set forth by Judge Chesler. Accordingly, I do not recommend that the present revised petition be stricken for non-compliance with Judge Chesler's decisions and orders. Similarly, I do not recommend that the present revised petition be dismissed or denied in its entirety because it is so excessive or outrageous as to shock the conscience of either this Special Master or the Court. I would reject Defendants' argument for such relief as set forth in footnote 16 at page 38 of their Joint Opposition.

(2.)     As Defendants assert vigorously, there are numerous hours expended on Grandalski-related discovery and on the motions for summary judgment and dismissal. However, I do not recommend either eliminating these fees sought by any particular law firm or discounting those of each Plaintiff's attorney.

- 5 -

Defendants brought their motions knowing both that many counsel would oppose them and that mandatory awards of counsel fees would result from the Grandalskis' success under either the FDCPA or the NCPA. Also, the Grandalskis' own motion for summary judgment was a logical, expected development in this case.

Similarly, during the period when depositions of both the Grandalskis and Defendants' designees were taken, Defendants had every reason to expect that several counsel would appear and participate on behalf of these Plaintiffs. Moreover, given the scope of their efforts required for both discovery and motion practice, I find no indications of either inflated or clearly duplicative entries that warrant disallowance on that basis.

In addition, as to the defense motion to dismiss for lack of jurisdiction due to the rejected offer of judgment, Plaintiffs' decision did not precipitate that motion, which the Court denied. Slip. Op. Oct. 6, 2011. Furthermore, as reflected in that Opinion, the Grandalkis' had legitimate concerns supporting that rejection.

To elaborate further, Plaintiffs did not multiply proceedings in this matter by declining to accept the Defendants' offer of judgment for $40,000, including all counsel fees and costs. The District Court denied a motion to dismiss Plaintiffs' claim in the wake of the offer of judgment which they had declined. The basic reasons advanced by Plaintiffs, then and now, are that accepting the offer of judgment would both preclude the Court from addressing counsels' claims for attorneys' fees and potentially bar the present Plaintiffs from appealing the denials of class certification and remaining named representatives of the class, were the District Court reversed. The undersigned has researched the parties' respective positions re: such appeal preclusion, because a clear indication that such appellate rights would not be compromised by acceptance of the offer of judgment could support a determination that fees for attorneys' efforts thereafter

2965486-01

were not reasonably incurred. Without elaborating on the authorities considered or how this Special Master might adjudicate this issue sitting as a jurist, I have determined that there are splits in the Circuit Courts of Appeals, that there is no clear rule emerging from U.S. Supreme Court decisions, and that one cannot predict with certainty how the Third Circuit would rule on this issue under the facts of this case. Accordingly, for the limited purpose of determining the reasonableness of attorneys' fees incurred after the offer of judgment was tendered, I determine that Plaintiffs' decision to reject that offer for the reasons summarized above was not so groundless or tenuous as to raise an impediment to my consideration of whether recovery of those fees incurred in defending and defeating the motion to dismiss should be allowed in this matter.

(3.)    While I do not recommend a blanket endorsement of either the approach or results achieved in the <u>Webster Green Thumb</u> case,[1] I do find it both helpful and constructive that the Plaintiffs (following that case) have set forth 11 categories reflecting the work of counsel, and have slotted the entries for work done into those categories. As described by Joseph S. Tusa, Esq. in his Supplemental Master Declaration herein,

> Within each general category, comporting analysis performed by *Webster* court cited by Defendants, Plaintiffs' counsel have attributed their lodestar reasonably related to the successful prosecution or defense of the Grandalski Plaintiffs' claims among the following sub-categories of particularized professional services:
>
>> A.    Complaints and mandatory disclosures:
>> B.    Depositions and witnesses;
>> C.    Document production and analysis;
>> D.    Written discovery;
>> E.    Other investigation and background research;
>> F.    Discovery motions;

---

[1]    <u>Webster v. Fulton County</u>, 112 F. Supp. 2d 1339 (N.D. Ga. 2000).

2965486-01

G.      Motions for summary judgment;

H.      Offer of judgment and related motions to dismiss;

I.      Motions to dismiss (excluding offer of judgment motions);

J.      Miscellaneous correspondence and conferences; and

K.      Settlement negotiations / Stipulations of voluntary dismissal.

Id. at ¶ 21 (footnote omitted). I also find it informative that counsel in each case applied these sub-categories within several other categories reflecting particular tasks or time frames. Those categories are:

1.      Grandalski-Only Professional Services;

2.      General Litigation Services Prior to April 11, 2011;

3.      General Litigation Services after April 11, 2011;

4.      Services to Prepare Motion for Fees and Costs.

See Tusa Declaration, passim. April 11, 2011 is the date by which 15 of the then remaining 18 Plaintiffs settled their individual claims. The Grandalskis and Denise Cassese remained as Plaintiffs.

Using the foregoing framework, I will first address categories numbered 2 and 3 above.

B.      <u>General Litigation Services</u>

I find that, while it was possible to discern the time spent by counsel on the Grandalskis' claims only and on the application for counsel fees and costs that is properly awardable here, I cannot extract with adequate certainty for the present award time which counsel categorize as General Litigation Services pre- or post- April 11, 2011. Indeed, Plaintiffs counsel do not make that effort either. They ask this Special Master to apply a factor of 2/18 to the former and 2/3 to the latter to reflect the ratio of the Grandalskis to the then total number of Plaintiffs. This approach is still an effort to employ "efficiency" (rather than) "accuracy," which Judge Chesler determined was inappropriate. Slip. Op. June 20, 2012 at 5.

2965486-01

Accordingly, I recommend that no fees be awarded for work categorized as General Services in either designated time frame, except for an allocation of time to research and prepare the Amended Complaint that presented the Grandalskis' claims.[2] Even here, however, time entries do not isolate the Grandalskis' claims from those of others. Accordingly, in this one instance alone, I recommend the use of the fractional approach which should otherwise be rejected in this matter. It is clear from the Declaration of Counsel that Joseph Tusa drafted and revised the Amended Complaint. Review by other counsel was modest and not truly necessary (at least in regard to the claims of the Grandalskis). From March 15 to March 31, 2005, Mr. Tusa expended 94.2 hours in preparing, drafting, editing and finalizing the Amended Complaint which, inter alia, added the Grandalskis as Plaintiffs. Supplemental Master Declaration of Joseph S. Tusa at Exhibit 9. Not being intimately familiar with all the details of that effort, I offer no opinion as to whether that was a reasonably necessary expenditure of time for that total pleading. However, applying a factor of 2/18 to reflect the Grandalskis participation with 16 other Plaintiffs at that time, one reaches a figure of 10.5 to reflect hours attributable to these remaining Plaintiffs. Given the particular claims presented on their behalf I find this to be a reasonable amount of time expended to research, draft, edit and finalize those claims of the Grandalskis. In addition, I note that this allocation of time is consistent with that which Defendants would employ in their hypothetical model individual case which is 10 hours. Defendants' Joint Opposition at 39.

Accordingly, I recommend an Award of reasonable attorneys' fees for the preparation of pleadings to assert the Grandalskis' claims to Joseph S. Tusa, Esq. for 10.5 hours of work at

---

[2] No time allocated to Grandalski-Only Professional Services is attributed to the preparation of their particular claims. Yet some compensable time for that task should be awarded if it can be determined.

2965486-01

$300 per hour, totaling $3,150. As noted previously, I find no other adequate proofs in the General Litigation Services categories that would support an Award here for work therein described.

C.    Grandalski-Only Professional Services

My review of the billing records submitted to me leads me to conclude that, for the most part, Plaintiffs' counsel have accurately culled from their time records the efforts and hours spent on work for the Grandalskis only.[3] I therefore recommend the following awards to each firm seeking the same for this work:[4]

(1.)    .Joseph S. Tusa, Esq.

I incorporate by reference, as if set forth verbatim herein, Exhibits 2 through 8 designating Mr. Tusa's application for work totaling 209.7 hours for categories of efforts which he designates as being "Grandalski Exclusive Services." My analysis of each of those entries leads me to conclude and recommend that all work described in Exhibits 2 through 7 (totaling 208.4 hours) should be allowed at the rate of $300 per hour, but that the 1.3 hours presented in Exhibit 8 as Miscellaneous Correspondence and Conferences be disallowed as being peripheral and unnecessary. Accordingly, I recommend an Award to Mr. Tusa for this work in the amount of $62,500.

(2.)    Trujillo Rodriguez and Richards

In her Supplemental Declaration in support of an award of attorneys' fees and costs, Lisa J. Rodriguez, Esq. presents 36.7 hours expended by Donna Siegal Moffa, Of Counsel and 6.3 hours expended by Nicole M. Acchione for Grandalski-Only Professional Services. Id. at 6, 7. I find that this work was reasonably necessary and would allow it in full. See Id. at Exhibit

---

[3]      Some charges are disallowed as revealed in the analysis below.

[4]      The firm of Robbins Geller et al. has allocated no time to this category.

A. Based upon my analysis of Reasonable Hourly Rates set forth in Section I of this Report, I recommend that attorneys' fees be awarded to reflect Ms. Moffa's work for 36.7 hours at $255 per hour, totaling $9,358.50, and to reflect Ms. Acchione's work for 6.3 hours at $205 per hour, totaling $1,291.50.

(3.)    Giskan Solotaroff Anderson & Stewart LLP

This firm presents Grandalski-related time of 11.4 hours for Oren Giskan and 11.1 hours for Catherine Anderson (both Partners in the firm) for Mr. Giskan's participation in the deposition of one of Defendants' Rule 30(b)(6) witnesses and Ms. Anderson's participation in a Grandalski deposition. Supplemental Declaration of Oren Giskan at Exhibit A. I find that these hours are reasonable and necessary to support the Grandalskis' interests in this matter. Once again, fixing the reasonable rates of these attorneys under the analysis in Section I hereof, I recommend that attorneys' fees be awarded to reflect Mr. Giskan's work for 11.4 hours at $322.50 per hour totaling $3,676.50, and to reflect Ms. Anderson's work for 11.1 hours at $312.50 totaling $3,468.75.

(4.)    Cafferty Faucher

As set forth in Exhibit A to the Supplemental Declaration of Patrick E. Cafferty supporting the present motions for attorneys' fees, William R. Kane, Esq., a Partner in the Cafferty Faucher firm, expended 49.9 hours from July 31 through August 4, 2006 for the preparation and taking of depositions of the Defendants Credit Bureau Central and Quantum Collections. Those depositions consumed three days, and I do not find the expenditure of that time for these efforts to be excessive or unreasonable. Rather, I determine that it was reasonable and necessary, and recommend that those 49.9 hours be allowed. The other entry reflecting Mr. Kane's work appears opposite the date October 27, 2006 and reads, "Review letter from Mrs.

2965486-01

Grandalski's physician. Conversations regarding same." This description is too indefinite and does not indicate the relevance of this work to the Grandalskis' success in this litigation. Accordingly, I recommend that this .3 hours of Mr. Kane be disallowed.

As set forth in Exhibit B of his supplemental declaration, Mr. Cafferty (also a Partner) seeks an allowance for 74.0 hours for his work on summary judgment motions. In addition, as set forth in Exhibit C thereof, he seeks compensation for 75.6 hours which he personally expended regarding "Offer of Judgment and Related Motions to Dismiss." Mr. Cafferty's Partner Anthony F. Fata also seeks an allowance of 2.4 hours for work in that category. As to the latter, Mr. Fata's efforts focused on the response to the offer of judgment and are reasonable both in scope and in the amount of time employed. Mr. Cafferty's time allotted to the summary judgment motions, while extensive, is clearly devoted to representation of the Grandalskis and reasonably necessary for the several motions sought by both Plaintiffs and Defendants. Also, as to his hours set forth on Exhibit C (75.6), Mr. Cafferty has established that they are relevant, reasonable and necessary for the successful denial of the offer of judgment and opposition to Defendants' ensuing motion to dismiss for lack of jurisdiction. Accordingly, I recommend the following awards of attorneys' fees to counsel from the Cafferty Faucher firm:

| | | |
|---|---|---|
| William R. Kane: 49.9 hours at $292.50 = | | $14,595.75 |
| Patrick E. Cafferty: 149.6 yours at $337.50 = | | $50,490.00 |
| Anthony F. Fata: 2.4 hours at $300 = | | $720.00 |

(5.) Quinn, Connor, Weaver, Davies and Rouco

At Exhibit 1 of his Supplemental Declaration, Glen M. Connor, Esq. presents the asserted "Grandalski Exclusive Services" provided by three attorneys and a clerk at his firm ("Quinn Connor"). Mr. Connor allocates his firm's Grandalski-Only Professional Services to the

categories of "Other Investigation and Background Research" and "Miscellaneous Correspondence and Conferences." The entries reflecting that work appear at Exhibit 1 to his Supplemental Declaration. I recommend that all services sought by Quinn Connor be disallowed. The time sought was logged between June 14 and July 16, 2007, and each entry deals with Medicare issues. According to all information before me, the claims of the Grandalskis emanate from their status as insureds of Anthem Blue Cross Blue Shield and the adding by Defendants of a $10 collection fee to their $20 co-payment charges. See Chesler, J., Slip. Op. Nov. 3, 2011 at 3-4. I find no mention of Medicare in connection with the Grandalskis' claims which are described at length in that Opinion dealing with the summary judgment motions. Id. at 6-18. Accordingly, although Mr. Connor claims that the services described in his Exhibit 1 are for the Grandalskis only, nothing else before me supports that conclusion, and the record indicates the contrary.

D.   Summary of Time and Fees Allowed for Counsels' Efforts
     Devoted to the Grandalskis Only

In summary, I recommend allowing and awarding the following attorneys' fees directly related to work on the Grandalskis' claims:

|  |  |
|---|---|
| (1.) Jospeh S. Tusa, Esq. | $62,500 |
| (2.) Trujillo Rodriguez & Richards | |
| (a.) Donna S. Moffa | $9,358.50 |
| (b.) Nicole M. Acchione | $1,291.50 |
| (3.) Giskan Solotaroff Anderson & Stewart LLP | |
| (a.) Oren Giskan | $3,676.50 |
| (b.) Catherine Anderson | $3,468.75 |
| (4.) Cafferty Faucher | |
| (a.) William R. Kane | $14,595.75 |
| (b.) Patrick E. Cafferty | $50,490.00 |
| (c.) Anthony F. Fata | $720.00 |

2965486-01

(5.)  Quinn Connor Weaver Davies and Ronco          $0

        (6.)  Robbins Geller Rudman & Dowd LLP              $0

E.  Fees Incurred in the Application for Fees and Costs

        The Parties agree that reasonable fees for preparation of fee petitions are recoverable as part of an award of attorneys' fees.  The Special Master now turns his attention to that facet of counsels' applications herein.

        At the outset, I recommend that no such allowances be awarded to either the Robbins Geller or Quinn Connor firm, because the former did not seek an award for any Grandalski-only services and the latter  failed to establish any entitlement to these services.  Additionally, the firm of Trujillo, Rodriguez and Richards seeks no award for time expended on its fee application.  I turn now to the applications of the three other firms.

        Their presentations appear in the Tusa Supplemental Master Declaration at Exhibit 22, the Giskan Supplemental Declaration at Exhibit D and the Cafferty Supplemental Declaration at Exhibit O.  Each of the Declarations and the entries on those Exhibits has a common, material characteristic.  The time period in the Tusa Declaration for such efforts is from December 7, 2011 to January 12, 2012; that in the Giskan Declaration is from December 13, 2011 to February 18, 2012, and that in the Cafferty Declaration is from December 7, 2011 to December 15, 2011. Therefore, this time was all expended upon the petitions that Judge Chesler found deficient in his Opinion of June 20, 2012 (four to six months after the last of the services for which compensation is presently sought).  Each of the Declarations before me was executed after the June 20, 2012 decision, ostensibly to cure the deficiencies of the prior petitions which necessitated their Revised Notice of Motion for attorneys' fees and costs.  The three Supplemental Declarations were executed and filed in support of that Revised Motion on the

following dates: (Tusa – August 10, 2012; Giskan – August 9, 2012, and Cafferty – July 26, 2012). That Motion, accompanied by the Supplemental Declarations was filed with the Court on August 13, 2012. Accordingly, no time dedicated specifically to the Revised Motion (on which Plaintiffs have prevailed in part, at least before this Special Master) has been presented to me; and the time presented was for services incurred in relation to the fee motion before Judge Chesler on which Plaintiffs did not prevail.

However, although no time is presented for preparation of the present Revised Motion, it cannot be said that none of the time previously expended has any relevance to that motion before me. I conclude that time spent reviewing and assembling records to support a potential award would be as applicable to the present applications as it was to their predecessors. Other entries may also have some present relevance. An analysis of the three declarations mentioned above is now in order.

(1.)   Joseph S. Tusa Supplemental Declaration (Ex. 22)

Mr. Tusa's Supplemental Declaration at Exhibit 22 presents a total of 23.5 hours for services related to preparation of the motion for fees and costs. Several of these are mixed entries which do not relate solely to the spadework necessary to present the hours in the fee petitions as a whole. I would disallow those entries for that reason. Other entries, however, clearly relate to that task. These appear opposite the dates of December 14, 19 and 20, 2011 and January 12, 2012, totaling 13.5 hours. Also, on December 7, 2011, Mr. Tusa "drafted and circulated memorandum describing agreed methodology to apportion and categorize lodestar and expenses....", and expending 1.3 hours on that task. Not all aspects of that methodology were adopted either by Judge Chesler or the undersigned. However, this work initiated all counsel fee

- 15 -

applications and undoubtedly reduced duplication of effort by the other counsel to whom it was circulated. I would allow this time to Mr. Tusa, as well.

Consistent with my conclusions presented in Section I of this Report re: Reasonable Hourly Rates, I recommend the following allowance for Mr. Tusa related to preparation and presentation of his present application for fees:

Joseph S. Tusa 14.8 hours @ $300 = $4,480

(2.) Oren Giskan Supplemental Declaration (Exhibit D)

This Exhibit reveals 2.0 hours to "Prep fee records" and 0.7 hours to review the District Court's judgment upon which a fee petition would be based, expended by partner Oren Giskan. I would allow this time for its utility on the present Revised Motion, but not the balance of his time which was devoted to the previous unsuccessful fee petition. Exhibit D also lists a total of 10.5 hours expend by paralegal Hali Thurber to enter and edit records of time expended, also an effort material to the Revised Motion. Accordingly, I recommend the following allowances for the Giskan firm related to preparation and presentation of its present application for fees:

Oren Giskan     2.5 hours @ $322.50 = $645

Hali Thurber    10.5 hours @ $80.00 = $840.00

(3.) Patrick E. Cafferty Supplemental Declaration (Exhibit O)

Exhibit O to Patrick Cafferty's Supplemental Declaration reveals three entries, between December 7 and December 12, 2011, totaling 7.6 hours devoted to the review and categorizing of "time detail" and correspondence with co-counsel regarding the same. I conclude that this time was reasonably expended in gathering the necessary financial information regarding the work undertaken by the Cafferty firm. The same is true of the next two entries on December 13 and 14, totaling an additional 5.0 hours. The balance of Mr. Cafferty's time is expended upon

2965486-01

the unsuccessful petition, including its brief, submitted to Judge Chesler. I recommend that this time not be allowed. Time expended by partner Michael S. Tarringer is also presented in Exhibit O. His three entries, from December 9 through 15, 2011, describe his work in categorizing and reviewing the firms records of time entries (totaling 3.1 hours). Also, he "Researched law in Third Circuit and D.N.J. re: reasonable hourly rates of attorneys litigating similar claims…." which consumed 2.4 hours. I find this time expended by Mr. Tarringer to be reasonable, necessary and relevant to the present Revised Motion, and I recommend that it be allowed. Therefore, I recommend the following awards for the Cafferty Faucher firm related to preparation and presentation of its present application for fees:

> Patrick E. Cafferty    12.6 hours @ $337.50 = $4,252.50

> Michael S. T arringer 5.5 hours @ $300.00 = $1,650.00

F.    Summary of Time and Fees Allowed for Counsels' Effort
      Devoted to Their Revised Motion for Fees and Costs

| | |
|---|---|
| (1.) Joseph S. Tusa, Esq. | $4,480 |
| (2.) Giskan Solotaroff Anderson & Stewart LLP | |
| (a.) Oren Giskan | $645 |
| (b.) Hali Thurber | $840 |
| (3.) Cafferty Gaucher | |
| (a.) Patrick E. Cafferty | $4,252.50 |
| (b.) Michael S. Tarringer | $1,650 |
| (4.) Other Firms | $0 |

G.    Litigation Costs and Expenses

Plaintiffs' counsel also seek an Award herein reimbursing them for certain alleged costs and expenses incurred by them and attributable to the Grandalskis' individual claims. I now turn my attention to that facet of the present Motion.

Before review of the individual claims of each firm for recovery of costs and expenses, this Special Master addresses the "Plaintiffs' Litigation Fund." This Fund and the disbursements therefrom are described in the supplemental Masetr Declaration of Joseph S. Tusa. Id. at 27 and Exhibit 25. As noted previously in this Report, I do not recommend reimbursement of fees other than those exclusively attributable to the Grandalskis' individual claims and those proven to be allowable in the presentation of the current fee petitions. In the former category, Plaintiffs' counsel seek collectively the sum of $7,796.66 in expenses and costs; in the latter $0. Id. Exhibit 25 designates these expenses as being for court reporter fees and travel and related expenses during the period June 9 through December 12, 2006. Although not articulated specifically, they appear to have been incurred at a time when they would be reasonable and necessary to pursue the Grandalski's individual claims. I would award these expenses paid from the Plaintiffs' Litigation Fund as a general award to counsel, leaving it to them to determine which firms are entitled to particular portions of this sum. Additional recoveries of fees and expenses, from a firm's disbursements other than to and through the Plaintiff's Litigation Fund, are addressed below.

(1.)  Tusa PC and its Predecessor Whalen & Tusa, P.C. ("WTPC")

In his presentation for reimbursement of Litigation Costs and Expenses, Joseph S. Tusa seeks no amount for expenditures to prepare the fee petitions. He seeks sums totaling $1,201.75 for such costs as related to "General Litigation Services before April 11, 2011" and $21.20 for

- 18 -

"General Litigation Services after April 11, 2011." Supplemental Master Declaration of Joseph E. Tusa.... at 26. As with the applications for fees in these two categories, there is no information before the Special Master that attributes portions of these costs to the Grandalski claims other than the 89% and 33% discounts which the Court has already rejected. However, the Grandalski-only charges, incurred in 2006 by WTPC and in 2011 by Mr. Tusa are reasonable in both amount and nature given the focused activity on the Grandalskis' claims in these time frames. Accordingly, I recommend reimbursement of expenses and costs listed as Gandalski Exclusive" in the amount of $632.24 incurred in 2011 and $1,869.56 incurred in 2006, for a total of $2,501.80. See Tusa Supplemental Declaration at Exhibits 23 and 24. I would deny the recovery of any other costs and expenses sought by Mr. Tusa and WTPC.

      (2.) Trujillo Rodriguez & Richards, LLC

      In her Supplemental Declaration in support of the present motion, Lisa J. Rodriguez seeks only costs and expenses calculated at 11% of those incurred as "General Litigation Services before April 11, 2011." Id. at 17. One might expect that some of the categories of expenses sought, such as those for "Computerized Legal Research", "Reproduction Costs;" and fees for "Transcripts" could have been allocated in part, with adequate particularity, to the Grandalskis' claims. However, this firm did not do that. For reasons previously expressed, I would not recommend the allowance of any costs and expenses sought by Trujillo, Rodriguez and Richards.

      (3.) Giskan Solotaroff Anderson & Stewart, LLP

      Similarly, the Giskan law firm does not specifically attribute any of its costs and expenses to the Grandalski claims. Oren Giskan Supplemental Declaration at 14 and Exhibit E. Rather that firm seeks to recover $417.22 in Pre-April 11, 2011 expenses and $15.41 in Post-

April 11, 2011 expenses using the discount rates previously discussed for those time frames. Id. Furthermore, nothing in the entries in Exhibit E permits a specific allocation of any costs or expenses to the Grandalskis claims. I recommend no allowance of costs and expenses to this firm.

(4.) Cafferty Faucher

This firm seeks only one item of costs and expenses solely attributable to the Grandalskis claims: $1,100.67 for "Hotel, meals, transportation" on August 4, 2006. Supplemental Declaration of Patrick E. Cafferty at 17. Although there is no further elaboration as to the specific undertaking at that time, it is an inherently reasonable figure for travel in connection with pursuit of the Grandalskis' interests, and I would allow it. Claims for discounted General Litigation Services (pre and post April 11, 2011) I recommend be disallowed, for lack of any attribution to the Grandalskis. Cafferty Faucher also seeks recovery of expenses totaling $660.01 for "Computer Research" in connection with its fee petition. Id. at 18, 19, Exhibit P. However, this research was undertaken on December 31, 2011 and January 31, 2012, within the period of the first, unsuccessful fee application, and there is no indication that it was related to tasks relevant to the present Revised Motion. I recommend that the Court disallow recovery of this $660.01.

(5.) Quinn, Connor, Weaver, Davies and Rouco

Speaking both for itself and its predecessor Whatley Drake & Kallas, this firm seeks no specific award of expenses and costs. It confines itself only to an undefined share of its contributions to the "Plaintiffs' Litigation Fund" discussed briefly at the outset of this Section G. Supplemental Declaration of Glen M. Connor at 13-14. I recommend that the Quinn Connor

2965486-01

firm, and others, be allowed a recovery from the Award to that Fund; however, I recommend no other award of costs and expenses to this firm.

(6.) Robbins Feller Rudman & Dows LLP

This firm, as noted in the Supplemental Declaration of Jack Reise, sought no fees for services directly attributable to the Grandalskis' claims and this Special Master recommended no award of fees to Robbins Geller. Id. at 13. Similarly, the "Reduced Costs" which it seeks in the amount of $654.95 are all attributed to "General Litigation Services before April 11, 2011." Id. Execution of the entries re: expenses incurred by this firm also does not permit attribution to the Grandalskis' claims. Id. at Exhihit B. For reasons previously stated, I would deny recovery of alleged expenses incurred in connection with work that was not itself allowed.

H.     Summary of Expenses and Costs Allowed to Counsel

| | | |
|---|---|---|
| (1.) | Tusa P.C. | $2,501.80 |
| (2.) | Trujillo Rodriguez & Richards | $0 |
| (3.) | Giskan Solotaroff Andersjon & Stewart LLP | $0 |
| (4.) | Cafferty Faucher | $1,100.67 |
| (5.) | Quinn, Connor, Weaver, Davies & Ruoco | $0 |
| (6.) | Robbins Geller Rudman & Dowd P.C. | $0 |
| (7.) | Plaintiffs' Litigation Fund | $7,796.66 |

V.      Additional Observations and Conclusions

One will note that I do not recommend discounts from the allowed fees here to reflect that the Defendants prevailed in part on the summary judgment motions. See Exhibit A hereto. I determine that no material amounts of time were expended by Plaintiffs' counsel solely on motions upon which they did not prevail. Stated otherwise, there are no indications in the record that had they moved on only the claims on which they succeeded, and opposed only the defense motions which the Court denied, the  time and efforts of Plaintiffs' counsel would have been less

2965486-01

than presented in the records before this Special Master. Therefore, I recommend that no such discount be applied to the present fee application.

Finally, while in most instances herein I have couched my determinations as recommendations to the Court, consistent with my duties in this matter, occasionally I may not have done so regarding my findings and conclusions. Rest assured, however, that, as Judge Chesler has expressly noted, I have by no means usurped or intended to usurp the powers of this Court to make the final decisions regarding an Award of counsel fees and costs under the present applications. In that spirit and with that understanding, I make <u>recommendations</u> for Awards to the following Plaintiffs' attorneys' firms:

| | | | |
|---|---|---|---|
| (1.) | Tusa P.C. (Whalen & Tusa, P.C.) | | |
| | (a.) | Attorneys' Fees | $66,980.00 |
| | (b.) | Expenses and Costs | $2,501.80 |
| | | | |
| (2.) | Trujillo Rodriguez & Richards, LLC | | |
| | (a.) | Attorneys' Fees | $10,650.00 |
| | | | |
| (3.) | Giskan Solotaroff Anderson & Stewart LLP | | |
| | (a.) | Attorneys' Fees | $8,630.25 |
| | | | |
| (4.) | Cafferty Faucher LLP | | |
| | (a.) | Attorneys' Fees | $71,708.25 |
| | (b.) | Expenses and Costs | $1,100.67 |
| | | | |
| (5.) | Joseph S. Tusa as Representative of Plaintiffs' Litigation Fund | | |
| | (b.) | Expenses and Costs | $7,796.66 |

DATED:

*Sept. 6, 2013*

Respectfully submitted,

_____
JOHN W. BISSELL
Special Master

2965486-01

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DENISE AGOSTINO, et al.,                    :
                                            :        **Civil Action No. 04-4362 (SRC)**
                        Plaintiffs,         :
                                            :                  **ORDER**
        v.                                  :
                                            :
QUEST DIAGNOSTICS, INC., et al.,            :
                                            :
                        Defendants.         :
                                            :
                                            :

**CHESLER**, District Judge

    This matter having come before the Court on four motions for summary judgment,

pursuant to FED. R. CIV. P. 56: 1) the motion by Plaintiffs Richard and Janet Grandalski

("Plaintiffs") [docket entry 267]; 2) the motion by Defendant Quest Diagnostics Inc. ("Quest")

[docket entry 274]; 3) the motion by Defendant Quantum Collections, Inc. ("Quantum") [docket

entry 325]; and 4) the motion by Defendant Credit Bureau Central ("CBC") [docket entry 327];

and the Court having considered the papers submitted by the parties; and the Court having opted

to rule based on the papers submitted and without oral argument, pursuant to Federal Rule of

Civil Procedure 78; and for the reasons expressed in the Opinion filed herewith,

    **IT IS** on this 3rd day of November, 2011,

    **ORDERED** that Plaintiffs' motion for summary judgment [docket entry 267] be and

hereby is **GRANTED IN PART AND DENIED IN PART**; and it is further

    **ORDERED** that Defendant Quest's motion for summary judgment [docket entry 274] be

EXHIBIT   A

and hereby is **GRANTED IN PART AND DENIED IN PART**; and it is further

      **ORDERED** that Defendant CBC's motion for summary judgment [docket entry 327] be

and hereby is **GRANTED IN PART AND DENIED IN PART**; and it is further

      **ORDERED** that Defendant Quantum's motion for summary judgment [docket entry 325]

be and hereby is **GRANTED IN PART AND DENIED IN PART**; and it is further;

      **ORDERED** that Defendant Quest's motion for summary judgment on all of Plaintiff

Denise Cassese's remaining claims be and hereby is **GRANTED**; and it is further

      **ORDERED** that Defendants Quest's, Quantum's, and CBC's (hereinafter, collectively

"Defendants") motions for summary judgment on Plaintiff Richard Grandalski's Racketeer

Influenced and Corrupt Organizations Act ("RICO") and unjust enrichment claims be and hereby

are **GRANTED**; and it is further

      **ORDERED** that Defendants' motions for summary judgment on Plaintiff Janet

Grandalski's RICO claim in Count One of the Amended Complaint be and hereby are

**GRANTED**; and it is further

      **ORDERED** that Plaintiffs' motion for summary judgment on the Fair Debt Collection

Practices Act claim against Defendants Quantum and CBC (collectively, the "DCDs") in Count

Two of the Amended Complaint be and hereby is **GRANTED**, and the DCDs' motions for

summary judgment on the claim be and hereby are **DENIED**; and it is further

      **ORDERED** that Plaintiffs' motion for summary judgment on the consumer fraud claim

against Quest in Count Five of the Amended Complaint be and hereby is **GRANTED**, and

Quest's motion for summary judgment on the claim be and hereby is **DENIED**; and it is further

      **ORDERED** that Plaintiffs' motion for summary judgment on the consumer fraud claim

against the DCDs in Count Five of the Amended Complaint be and hereby is **DENIED**, and the DCDs' motions for summary judgment on the claim be and hereby are **GRANTED**; and it is further

   **ORDERED** that Plaintiffs' motion for summary judgment on the breach of contract claim against Quest in Count Six of the Amended Complaint be and hereby is **DENIED**, and Quest's motion for summary judgment on the claim be and hereby is **GRANTED**; and it is further

   **ORDERED** that Plaintiff Janet Grandalski's motion for summary judgment on the unjust enrichment claim against Defendant Quest in Count Seven of the Amended Complaint be and hereby is **GRANTED**, and Quest's motion for summary judgment on the claim be and hereby is **DENIED**; and it is further

   **ORDERED** that, to the extent that the DCDs retained any portion of the $40 in collection fees paid for Mrs. Grandalski's four dates of service, Plaintiff Janet Grandalski's motion for summary judgment on the unjust enrichment claim against the DCDs in Count Seven of the Amended Complaint be and hereby is **GRANTED**, and the DCDs' motions for summary judgment on the claim be and hereby are **DENIED**; and it is further

   **ORDERED** that Plaintiffs' motion for summary judgment on the common law fraud claim against Defendants in Count Eight of the Amended Complaint be and hereby is **DENIED**, and Defendants' motions for summary judgment on the claim be and hereby are **GRANTED**; and it is further

**ORDERED** that Plaintiffs' request for prejudgment interest be and hereby is **DENIED**;

and it is further

**ORDERED** that Defendant Quest's request for an offset be and hereby is **DENIED**.

         s/Stanley R. Chesler
        STANLEY R. CHESLER
        United States District Judge